**LAFAYETTE EXPO CENTER, INC.,**
**Appellant (Plaintiff Below),**

**v.**

**Leland OWENS, Executor of Glenn R. Pitman Estate, and Glenn R. Pitman Estate, Appellees (Defendants and Counter–Claimants Below),**

**Harry V. Beck,**
**(Counter–Defendant Below).**

**No. 12A04–8801–CV–5.**

Court of Appeals of Indiana,
Third District.

Dec. 12, 1988.

Rehearing Denied Jan. 17, 1989.

Jerome L. Withered, Matthew J. Kendrick, Reiling, Teder & Withered, Lafayette, for appellant.

George M. Plews, Christopher J. Braun, Baker & Daniels, Indianapolis, Ind., Robert M. Shaffer, Morrison, Robbins & Shaffer, Frankfort, Ind., for appellees.

HOFFMAN, Judge.

Appellant optionee Lafayette Expo Center appeals the granting of a motion for summary judgment in favor of optionor Leland Owens, executor of the Glenn R. Pitman Estate. The facts indicate that Owens leased commercial real estate to Harry V. Beck, who later assigned the lease to Lafayette Expo.

The lease, which expired November 1, 1986, contained an option to purchase provision which stated:

"LESSEE, its successors and assigns are hereby given the right and option to purchase the premises herein leased (at any time during the original term of this Lease or any extension thereof for the sum of Three Hundred Forty Five Thousand Dollars ($345,000.00) payable as follows:

Ten Thousand Dollars ($10,000.00) down. Balance on Land Contract at ten percent (10%) interest with monthly payments of Two Thousand Seven Hundred Dollars ($2,700.00) per month or more until paid in full, at any time land contract may be paid off without any penalty."

On September 2, 1986, Lafayette Expo attempted to exercise the option to purchase by counsel's letter which read in part:

"Dear Mr. Owens:

This is to advise you that I have been authorized to proceed on the execution of the option to purchase contained in the lease of Glenn R. Pitman—Lafayette Expo Center property.

Upon examining the option to purchase, it appears as though my client is entitled to purchase the property for the sum of $345,000.00 payable at $10,000.00 down and the balance on a real estate contract at 10% interest with monthly payments in the amount of $2,700.00. I presently have the down payment in my possession and I am in the process of drawing up a land contract agreement."

Lafayette Expo's interpretation of the option to purchase provision insisted payments should amount to $2,700.00 a month. Owens refused to accept the option to purchase because payments of $2,700.00 per month would never satisfy payment of the principal and would not fully pay accumulating interest.

Lafayette Expo brought a specific performance action to enforce the option to purchase. Owens filed a motion for summary judgment which the trial court granted. The trial court's summary judgment findings read in part:

"If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law summary judgment may be granted. The Court can find in regard to plaintiff's Complaint for Specific Performance that there is no genuine issue as to any material fact. The evidence is the same now as it would be at trial, i.e.

1.) The parties entered a contract on October 31, 1983.

2.) The contract had an option to purchase section.

3.) Plaintiff desires to exercise the option to purchase by paying $2,700.00 per month.

4.) By paying $2,700.00 per month plaintiff will not pay the amount of the interest accumulating and willing to reduce the principal.

In that there appears to be no question as to any material fact the remaining question is whether defendants are entitled to judgment as a matter of law. Any ambiguity in the contract must be construed against the drafter which in this case is Harry V. Beck. The contract provides 'Ten Thousand Dollars ($10,000.00) down. Balance on Land Contract at ten percent (10%) interest *with* monthly payments of Two Thousand Seven Hundred Dollars ($2,700.00) per month or more until paid in full, at any time land contract may be paid off without any penalty.' The word 'with' creates an ambiguity in that the terms of the option to purchase can be construed in two ways. One construction is that the purchaser is allowed to pay $2,700.00 per month which will give an apparently endless ownership interest and neither reducing the principal nor paying the amount of interest accruing. The other construction is that the purchaser pay 10% interest along with $2,700.00 per month on the principal. In that the former construction is unfavorable to the non-drafter the latter must be construed against the drafter.

Applying the latter construction, the plaintiff did not timely exercise the option to purchase and judgment should be entered for defendants and against plaintiff on the Complaint for Specific Performance."

Appellant optionee presents two issues for review:

(1) whether the trial court erred in finding that the optionee failed to timely exercise its option to purchase; and

(2) whether equitable principals of fairness and justice should be applied by a reviewing court to protect optionees'

investments in leased commercial real estate.

On appeal from the grant of summary judgment based solely on a question of law, the reviewing court stands in the shoes of the trial court, and will look to see if the law was accurately applied. *Urban Hotel v. Main & Washington Joint Venture* (1986), Ind.App., 494 N.E.2d 334, 337.

An option to purchase real estate is a contract by which the owner of the realty agrees with another person that the latter shall have the power to purchase such property at a fixed price within a certain period of time. By an option, the owner subjects himself to the liability of having to convey the property if the option is exercised within the time and in the manner stipulated. Time is of the essence of the contract, in the broadest sense of the rule, where a contract leaves it optional with one party to do a certain thing at a specified time. The failure of the option holder to comply with the option's terms deprives him of the right to demand the enforcement of the contract. *Romain v. A. Howard Wholesale Co.* (1987), Ind.App., 506 N.E.2d 1124, 1127.

■ To exercise an option to purchase, the decision to purchase must be made by the optionee under the terms of the option and the decision must be communicated within the life of the option. Since the optionee is the party exercising the option, courts require strict adherence to the option's terms. *Theobald v. Chumley* (1980), Ind.App., 408 N.E.2d 603, 605.

■ Appellant argues that the trial court erred in holding that Lafayette Expo did not timely exercise the option to purchase. Lafayette Expo attempted to exercise the option by letter on September 2, 1986. The option expired with the lease on November 1, 1986. Lafayette Expo insisted the option to purchase terms required a $2,700.00 monthly payment. The trial court correctly noted that $2,700.00 in monthly installments would never complete payment of the principal or pay the accumulating interest.

Lafayette Expo's assignor, Harry V. Beck, drafted the lease. The trial court correctly ruled that all ambiguities in a contract are to be strictly construed against the party who prepared the document. *Turnpaugh v. Wolf* (1985), Ind. App., 482 N.E.2d 506, 509. The trial court interpreted the terms of the option as requiring payment of 10% on the principal plus $2,700.00 per month. This is the only purchase method that would have satisfied payment of principal and accumulating interest.

Lafayette Expo's interpretation of the option terms differs from mere mistake or inadvertance in the exercise of an option to purchase. In *Rowland v. Amoco Oil Co.* (1982), Ind.App., 432 N.E.2d 414, specific performance of an option contract was upheld even though the optionee mistakenly included an incorrect purchase price in the letter exercising the option. The optionee made a typographical error by stating a $60,000.00 purchase price when the option price was $66,000.00.

In the present case, the record is devoid of evidence that mere mistake like a typographical error caused the misinterpretation. Lafayette Expo's construction of the option to purchase deviated from the bargained for method of achieving full purchase of the property in an attempt to economically disadvantage the optionor. Lafayette Expo's effort to exercise the option to purchase failed to strictly and unequivocally adhere to the lease's option to purchase provision. The trial court correctly ruled that Lafayette Expo failed to exercise the option according to the agreed upon purchase terms prior to expiration of the option lease.

Lafayette Expo next argues that equitable principles of fairness and justice require the reviewing court to protect its interest in the leased property. Lafayette Expo spent $200,000.00 and 3,000 hours of labor in improving and renovating the leased property. Lafayette Expo contends the trial court's holding imposed a forfeiture on the improvements made to the leased property. Lafayette Expo requests that the property be foreclosed and the proceeds equitably distributed to prevent forfeiture. *Skendzel et al. v. Marshall et al.* (1973), 261 Ind. 226, 301 N.E.2d 641 and its progeny prevent forfeiture of a buyer's purchase equity in a conditional or installment sale of real or personal property. *Skendzel* does not apply to commercial leases with unexercised options to purchase. Lafayette Expo made no payments toward the real estate's purchase price. Expenditures for monthly rent and improvements do not create purchase equity in leased property with an option to buy. Since Lafayette Expo had made no purchase payments on the leased property, it forfeited no purchase equity in the leased property. It has been many times held that an option to purchase gives no right of property in and to the thing which is the subject of the option. It is not a sale. It is not even an agreement for a sale. At most, it is but a right of election in the party receiving the same to exercise a privilege, and only when that privilege has been exercised by an acceptance does it become a contract to sell. *Butsch v. Swallow* (1922), 78 Ind.App. 101, 106, 134 N.E. 877, 878.

The lease agreement made clear that improvements are the property of the lessor in the following provision:

"LESSEE shall make alterations on, or about the leased premises without the prior written consent of LESSOR. Any such alterations or improvements shall become the property of LESSOR at the termination of this Lease."

Equitable relief is not in order when improvements are made to leased property under an unexercised option to purchase and the lease provides that improvements become property of the lessor.

AFFIRMED.

GARRARD, P.J., and STATON, J., concur.