James A. BROKAW, Appellant–
Defendant,

v.

William T. ROE, Appellee–Plaintiff.

No. 02A05–9510–CV–411.

Court of Appeals of Indiana.

Aug. 9, 1996.

Transfer Denied Jan. 28, 1997.

T. Dean Swihart, Hobbs & Swihart, Fort Wayne, for appellant–defendant.

Jon A. Bomberger, Robert D. Moreland, Baker & Daniels, Fort Wayne, for appellee–plaintiff.

## OPINION

GARRARD, Judge.

James Brokaw appeals the judgment entered against him in this action to enforce an option to purchase real estate.

### FACTS [1]

In 1979, Brokaw began discussions with a co-worker, William Roe, about purchasing his home in Fort Wayne, Indiana. Brokaw moved to Florida, but the parties continued their negotiations. Eventually, Brokaw, Roe and his wife [2] entered into a written lease and a written option to purchase in May of 1980. At this same time, Brokaw sent Roe the abstract for the property.

The option agreement provided that Roe could exercise the option by written notice to Brokaw. The option further specifically provided that:

> In the event the Optionees [Roes] fail to exercise this option as of May 1, 1983, and/or close the purchase of the property within sixty (60) days after receipt of the abstract subsequent to May 1, 1983, this option shall automatically terminate and the Deed and Affidavit shall be returned to the undersigned by the Escrow Agent.

(R. 27). The agreement acknowledged the receipt of $2,500.00 in consideration of the option to purchase. This amount was to be applied to the purchase price if the option was exercised; otherwise, it would be forfeited.

After entering the lease and option agreements, Roe began to sublet the property and has done so continuously since that time. Before the May 1983 deadline under the option agreement, Roe wrote to Brokaw and asked him to sign an enclosed handwritten agreement to extend the agreement involving the house "indefinitely." (R. 57). Brokaw responded that "[i]n regards to the house in Ft. Wayne—I'd like to continue the agreement; but, indefinitely is a long time—give me a call and we'll discuss it." (R. 60). At no point did Roe exercise the option pursuant to the terms of the agreement. The lease agreement terminated in April of 1986.

However, even after the termination of both the lease and the option, the parties continued their relationship, with Roe making the mortgage payments on the house directly to the finance company. Further, Roe made all improvements and repairs to the house, paid the property taxes, and maintained property insurance. During this time, both Roe and Brokaw treated the property as owned rental property for income tax purposes.

On January 29, 1992, counsel for Roe wrote to Brokaw, stating that Roe wished to pay the remaining balance on the mortgage and close on the purchase of the property, contending that the option to purchase had been exercised by Roe on May 1, 1980. However, the parties could not come to an agreement on the terms of the sale, and this action ensued. The trial court specifically found that the parties failed to reach either a written agreement or an oral agreement with regard to extending the lease or option to purchase. Nevertheless, the court concluded that Brokaw had waived the right to hold Roe to the exact terms required to exercise the option agreement. The court further found that Brokaw was estopped from denying Roe's rights under the option because of his failure to insist upon strict performance of the option's terms. Brokaw appeals.

### DISCUSSION

Brokaw presents four issues for our review, but our decision only requires us to determine whether the trial court's findings of fact and conclusions of law support the judgment.

▆▆▆ The record does not reveal that either party filed a written request for specific findings of fact and conclusions of law pursuant to Ind.Trial Rule 52. When a trial court enters gratuitous findings of fact and conclusions of law, the specific findings control as to the issues that they cover, and the general judgment standard applies to any

---

1. We direct counsel's attention to Ind.Appellate Rule 7.2(A)(3)(a), which requires notations on the margin of each page of the transcript of the evidence indicating the name of each witness and whether the examination is direct, cross, or redirect.

2. The Roes divorced in 1986.

issue not covered by the specific findings. *Bishop v. Sanders,* 624 N.E.2d 64, 66 (Ind.Ct. App.1993), *reh'g denied, trans. denied.* We may affirm a general judgment on any theory supported by the evidence at trial.· *Showalter, Inc. v. Smith,* 629 N.E.2d 272, 274 (Ind.Ct.App.1994), *trans. denied.* We will not reweigh the evidence, and we consider only that evidence which supports the trial court's judgment.· *Bishop,* 624 N.E.2d at 66.

An option to purchase real estate is a contract by which the owner of the realty agrees with another person that the latter shall have the power to purchase such property at a fixed price within a certain period of time. *Romain v. A. Howard Wholesale Co.,* 506 N.E.2d 1124, 1127 (Ind.Ct.App.1987), *reh'g denied, trans. denied.* "By an option, the owner subjects himself to the liability of having to convey the property if the option is exercised within the time and in the manner stipulated." *Id.* (emphasis omitted). By failing to comply with the option's terms, the option holder deprives himself of the right to demand the enforcement of the contract. *Lafayette Expo Center, Inc. v. Owens,* 531 N.E.2d 508, 510 (Ind.Ct.App.1988), *reh'g denied, trans. denied.* Because the optionee is the only party capable of exercising the option, courts have required strict adherence to the option's terms. *Id.*; *Theobald v. Chumley,* 408 N.E.2d 603, 605 (Ind.Ct.App.1980). The court in *Lafayette Expo* observed:

> It has been many times held that an option to purchase gives no right of property in and to the thing which is the subject of the option. It is not a sale. It is not even an agreement for a sale. At most, it is but a right of election in the party receiving the same to exercise a privilege, and only when that privilege has been exercised by an acceptance does it become a contract to sell.

*Lafayette Expo,* 531 N.E.2d at 510, citing *Butsch v. Swallow,* 78 Ind.App. 101, 134 N.E. 877, 878 (1922).

In the case before us, the court found that Roe did not send written notice of his intent to exercise the option. The court further found that no specific terms as to an oral agreement to modify or extend the option agreement were agreed upon by the parties. However, the court went on to conclude that Brokaw had waived the right to hold Roe to the specific terms of the option agreement by failing to "clearly claim[ ] termination of the Option soon after May 1, 1983...." (R. 12). Waiver is the ·voluntary and intentional relinquishment of a known right. *Lake County v. State ex rel. Manich,* 631 N.E.2d 529, 533 (Ind.Ct.App.1994), *reh'g denied.* Mere silence, acquiescence, or inactivity is not waiver unless there was a duty to speak or to act. *Id.* By the terms of the option agreement, the option automatically expired if it was not exercised by May 1, 1983. Thus, Brokaw had no duty to "claim termination" of the option; termination occurred automatically. We find the trial court's conclusion of waiver to be clearly erroneous.

We also decide that the court's conclusion that Brokaw is estopped from enforcing the specific terms of the option is clearly erroneous. The doctrine of estoppel springs from equitable principles, and it is designed to aid in the administration of justice where, without its aid, injustice might result. *Levin v. Levin,* 645 N.E.2d 601, 604 (Ind.1994). Use of the doctrine is not limited to circumstances involving an actual or false representation or concealment of an existing material fact. *Id.* Instead, equitable estoppel is available if one party through his course of conduct knowingly misleads or induces another party to believe and act upon his conduct in good faith and without knowledge of the facts. *Id.*

Here, Roe continued to make the mortgage payments for the house, did all maintenance work on the house, paid the property taxes and maintained property insurance. He argues that, as Brokaw permitted him to take these actions, Brokaw is estopped from denying Roe the right to purchase the house under the option agreement. However, under the option agreement, the parties bargained for a specific purchase price with a deadline by which the option was to be exercised. Roe failed to exercise the option, and the parties did not reach an agreement on extending the option. Instead, the parties continued to act pursuant to the

lease until its expiration in 1986. After the lease expired, the parties performed as they had previously under the lease. There is no evidence that Roe did not have full knowledge of the facts surrounding the parties' arrangement, or that his conduct was any different than it had been under the lease agreement. Thus, we fail to see how Roe was misled or induced to act upon Brokaw's conduct. Indeed, it would seem to us to be inequitable to hold Brokaw to a sales price which was negotiated over fifteen years ago when Roe failed to exercise the option to purchase. When the time for the exercise of the option has expired, the option holder has received the full agreed equivalent of the price he paid for his option and cannot complain when a court fails to give effect to an acceptance that did not comply with the option's terms. *Romain,* 506 N.E.2d at 1127. Roe received all that he bargained for under the option agreement, and the parties' relationship since has been formed by the lease agreement and their mutual acquiescence to continue that relationship after the expiration of the lease.

In *Lafayette Expo,* the court concluded that the optionee's effort to exercise the option failed to strictly adhere to the option's provisions. However, the optionee also argued that principles of equity required the court to protect its interest and investment in the leased commercial real estate. The optionee has invested $200,000.00 in improving and renovating the leased property and sought a foreclosure to prevent forfeiture pursuant to *Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641 (1973). However, the court stated that "[e]xpenditures for monthly rent and improvements do not create purchase equity in leased property with an option to buy." *Lafayette Expo,* 531 N.E.2d at 511. Thus, the optionee had not forfeited any purchase equity. *Lafayette Expo,* 531 N.E.2d at 511. We find this reasoning equally applicable to the case at bar.

For the foregoing reasons, the judgment is reversed.

HOFFMAN and BARTEAU, JJ., concur.