James SIZEMORE, a minor, and Jennifer Lear, his mother and next friend, Appellant–Counterplaintiffs,

v.

ERIE INSURANCE EXCHANGE, Appellee–Counterclaimant.

No. 41A01–0211–CV–443.

Court of Appeals of Indiana.

June 17, 2003.

Frederick N. Hadley, Indianapolis, IN, Attorney for Appellant.

John C. Trimble, Robert R. Foos, Jr., Indianapolis, IN, Attorney for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Appellants ("the Plaintiffs") James Sizemore ("Sizemore"), a minor, and Jennifer Lear ("Lear"), his mother and next friend, appeal the trial court's order granting summary judgment in favor of Appellee Erie Insurance Exchange ("Erie"). We affirm.

On April 5, 2001, Glen Root ("Glen") was driving a vehicle owned by Zacharajah Lightfoot ("Zach") in Franklin, Indiana. Zach was riding in the front passenger seat, Floyd Root ("Floyd"), Glen's brother, was riding in the backseat behind Zach, and Josh Gearhart ("Josh") was riding in the back seat behind Glen. Zach's vehicle was uninsured.

On that date, the boys were on their way to play paintball and were transporting two paintball guns, paintballs, and CO2 canisters. Josh owned the paintball guns. As the boys were driving Josh started to attach a CO2 canister to one of the paintball guns and handed that gun to Floyd.

Josh then picked up the other paintball gun to get it ready to play. The boys saw Sizemore walking and pulled the car over to talk with him. Sizemore walked up to the car and stuck his head inside the right front passenger window.

Even though Josh was certain that the paintball gun's safety was on when he handed the gun to Floyd, as soon as Floyd rested the gun, safety-side down, on the top of the front-right passenger seat the gun fired. The gun was about ten to twelve inches from Sizemore's head when it fired. Sizemore was struck in the left eye when the gun discharged. Because of the injuries Sizemore sustained, Sizemore's eye was removed and was replaced with a prosthetic device.

Erie, Lear's uninsured motorist insurance provider, filed a declaratory judgment action to obtain a determination on the issue of coverage. Erie contended that there was no coverage under Lear's policy with Erie for Sizemore's injuries. Erie filed a motion for summary judgment that was granted by the trial court. This appeal ensued.

■ Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Aide v. Chrysler Financial Corp.*, 699 N.E.2d 1177, 1180 (Ind.Ct.App.1998), *trans. denied.* On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with the presumption of validity. *See Indiana Bd. Of Public Welfare v. Tioga Pines*, 622 N.E.2d 935, 939–940 (Ind.1993), *cert. denied*, 510 U.S. 1195, 114 S.Ct. 1302, 127 L.Ed.2d 654 (1994). The party appealing from an order granting a motion for summary judgment has the burden of persuading the

appellate tribunal that the decision to issue the order granting summary judgment was erroneous. *See Department of Revenue v. Caylor–Nickel Clinic,* 587 N.E.2d 1311, 1313 (Ind.1992). On review, we face the same issues that were before the trial court and follow the same process. *Id.* All properly asserted facts and reasonable inferences should be resolved against the movant. *Belford v. McHale, Cook & Welch,* 648 N.E.2d 1241, 1244 (Ind.Ct.App. 1995), *trans. denied.* The appellate court may not reverse the entry of summary judgment on the ground that a genuine issue of material fact exists unless the material fact and the evidence relevant thereto were designated specifically to the trial court. Ind. Trial Rule 56(H). Furthermore, we will sustain the trial court's decision to grant a motion for summary judgment if it is sustainable by any theory or basis found in the record. *See Ward v. First Indiana Plaza Joint Venture,* 725 N.E.2d 134, 136 (Ind.Ct.App.2000).

Erie's policy stated as follows:

> We will pay for damages for bodily injury and property damage that the law entitles you or your legal representative to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle. Damages must result from a motor vehicle accident arising out of the ownership or use of the uninsured motor vehicle or underinsured motor vehicle as a motor vehicle.

Appellants' App. A–8.[1] The trial court found that the incident in which Sizemore received his injuries could not be construed as a motor vehicle accident and that there was no causal connection between the incident and the use or operation of a motor vehicle. Appellants' App. A–13.

Appellants contend that the trial court erred by finding that there was no causal connection between the use or operation of the car and the discharge of the paintball gun. They contend that the discharge was set off by the physical contact with the automobile's headrest and that only that minimal contact is necessary to establish a causal connection.

In *State Farm Mut. Auto. Ins. Co. v. Spotten,* 610 N.E.2d 299 (Ind.Ct.App.1993), Spotten was stopped at a traffic light when a passenger in the other vehicle fired numerous shots into Spotten's vehicle injuring him. Spotten filed a complaint against the driver and the passengers of the other vehicle and pursued a claim with his own insurance company under a section of the policy. The language of that policy was as follows:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

The policy clearly limited the damages to those an insured is legally entitled to collect from the owner or driver of an uninsured vehicle. We concluded that since there was no evidence that the driver intentionally aided the passenger, negligently allowed the passenger with a gun in the vehicle, or had knowledge about the gun or the passenger's intent to fire it, that a random act of violence by a vehicle passenger is not a risk reasonably contemplated by the parties to the insurance contract. 610 N.E.2d at 302.

Further, in *Moons v. Keith,* 758 N.E.2d 960 (Ind.Ct.App.2001), Williams and the occupants of his vehicle were injured when

---

**1.** The insurance policy contained an exclusion for incidents involving weapons. The trial court expressly declined to address the issue. Likewise, we choose not to address this argument.

Keith positioned his vehicle beside Williams' vehicle and fired numerous shots into the car. Williams pursued uninsured motorist benefits from his insurer. The provision in his policy read as follows:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance, or use of an uninsured motor vehicle.

We relied upon the supreme court's definition of the meaning of the phrase "arising out of the ownership, maintenance, or use of a vehicle" provided in *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.*, 260 Ind. 32, 291 N.E.2d 897 (1973), in resolving the appeal. The supreme court stated that the efficient and predominating cause of the accident must arise out of the use of the vehicle in order for an unnamed insured to be covered. 291 N.E.2d at 899. Further, we held that in order to find coverage, there must be a causal connection or relationship between the vehicle and the injury. *Moons*, 758 N.E.2d at 964. However, the causal connection between the two must not be too remote. *Id.*

In the present case, the trial court found that there was no causal connection between the accident and the use or operation of Zach's vehicle. Appellant's App. A–13. The undisputed facts established that the only connection between the vehicle and the injury was that the vehicle happened to be the physical object against which the safety of the paintball gun may have come in contact. The trial court correctly determined that the efficient and predominating cause of Sizemore's injury did not arise out of the use of the vehicle. The vehicle only remotely contributed to Sizemore's injury by transporting the boys and the paintball equipment to the scene of the incident and by possibly coming into physical contact with the safety of the paintball gun prior to the gun discharging.

Appellants have cited to cases that are factually similar from other jurisdictions in which coverage was found to exist. However, we decline to follow those cases. This court has already chosen to follow a more restrictive approach in determining whether an incident involving the discharge of a firearm from inside a motor vehicle causing bodily injury to another involves the use of a motor vehicle for insurance coverage purposes. *See e.g.*, *Moons*, 758 N.E.2d at 964; *Spotten*, 610 N.E.2d at 302.

In addition, the present case involves insurance policy language that itself is more restrictive than that of *Moons* and *Spotten*. The insurance policy in the present case provides coverage for bodily injury and property damage from the owner or operator of an uninsured motor vehicle resulting from a "motor vehicle accident." Appellant's App. A–12. The trial court correctly found that the incident leading up to Sizemore's injury was not a motor vehicle accident. Appellant's App. p. A–13. Therefore, even if we assumed, for the sake of argument, that the physical contact between the paintball gun safety and the seat of the car did arise out of the use of the motor vehicle, the damages did not result from a motor vehicle accident.

Appellants have failed to establish that the trial court's decision to grant Erie's motion for summary judgment was erroneous.

Affirmed.

NAJAM and BARNES, JJ., concur.