Hilton A. TURNER, Jr., Appellant–Plaintiff and Counter–Defendant,

v.

CITY OF KOKOMO, Kokomo Board of Aviation Commissioners, Appellees–Defendants and Counter–Plaintiffs.

No. 34A04–0303–CV–144.

Court of Appeals of Indiana.

March 5, 2004.

Rehearing Denied May 12, 2004.

airplane hangar located at the Kokomo Airport. In particular, Turner makes a two-part argument. He first argues that his property interest in the hangar is entitled to due process protection. Turner next argues that his protected property interest was violated because he should have been given actual notice of the July 23 special meeting and because Kokomo Airport terminated his lease without good cause. However, because we find that Turner's property interest in the hangar is not entitled to due process protection, we affirm.[1]

### Facts and Procedural History

On August 1, 1993, Turner entered into a month-to-month lease agreement with the Kokomo Municipal Airport, which is owned by the Kokomo Board of Aviation Commissioners ("Board") and the City of Kokomo (collectively "Kokomo Airport"), for use of an airplane hangar. According to the lease, "either party can terminate the lease by serving thirty (30) days written notice of such intent upon the other party." Appellant's App. p. 194. In addition, the lease provides that "[Turner] agrees to abide by such rules and regulation[s] as may be established from time to time by the [Kokomo Airport], covering the use of said hangar space and related facilities." *Id.*

In April 2002, over eight years after the lease was executed, Kokomo Airport informed its hangar tenants, including Turner, that it was considering a new hangar rental agreement and included a copy of the proposed lease, which would take effect in July 2002. The Board invited comments on the new agreement to be submitted by May 20, 2002. On June 5, 2002,

Hilton A. Turner, Jr., Kokomo, IN, Pro Se Appellant.

Thomas J. Trauring, Kokomo, IN, Attorney for Appellees.

### OPINION

VAIDIK, Judge.

#### Case Summary

Hilton A. Turner Jr. appeals the trial court's decision ordering him to vacate an

1. Because Turner filed an amended appellant's brief omitting claims not properly raised before this Court, we deny as moot the Appellee's Motion to Strike Portions of Appellant's Brief.

Turner wrote a letter to Kokomo Airport objecting to several terms of the proposed lease and countering with a lease agreement of his own drafting.

On July 23, 2002, the Board held a special meeting, called by the Board President. More than forty-eight hours before the special meeting, the Board posted a written notice of the meeting on a bulletin board outside the Board's regular meeting room and distributed a written notice to the local media. No written notice was given to the Board members.[2] Yet, all Board members were in attendance and acknowledged waiving written notice of the special meeting. During the special meeting, the Board unanimously passed a resolution to terminate Turner's lease effective August 31, 2002, unless Turner would sign the new hangar lease by July 31, 2002.[3] Turner did not attend this public meeting.

Following the special meeting, the Board sent Turner a letter by certified mail informing him of the Board's resolution. Turner received the notice on July 25, 2002. On July 30, 2002, the Board sent Turner a second notice, which Turner received on August 7, 2002. Yet, by July 31, 2002, Turner had failed to sign the new hangar lease agreement.

On August 12, 2002, Turner filed a complaint against Kokomo Airport, in which he alleged that the Board had violated Indiana's Open Door Law and that the new hangar lease was unconscionable and against public policy. In response, Kokomo Airport filed a counterclaim seeking possession of the hangar Turner occupied. Thereafter, Kokomo Airport moved for partial summary judgment on the possession issue, and Turner filed a cross-motion for summary judgment. On March 10, 2003, after hearing oral arguments, the trial court denied Turner's motion and granted partial summary judgment in favor of Kokomo Airport, ordering Turner to return possession of the hangar. Turner was present when the trial court announced its decision. On March 13, 2003, the trial court issued an order directing Turner to vacate the hangar by 8:00 a.m. on March 16, 2003. Turner now appeals the grant of partial summary judgment in favor of Kokomo Airport.[4]

## Discussion and Decision

Turner's main argument is that his protected property interest in the hangar was violated because he should have been given actual notice of the July 23 special meeting and because Kokomo Airport terminated his lease without good cause.[5] Put differ-

---

2. *See* Ind.Code § 8–22–2–4 (providing that Board members should be given written notice of special meetings but can waive written notice by attendance).

3. Kokomo Airport admits that the same resolution passed by the Board one week earlier may have violated public notice requirements of Indiana's Open Door Law and that the special meeting was called to rectify the procedural defects of the previous meeting.

4. On August 27, 2003, this Court's motions panel determined that the trial court's partial summary judgment order was appealable as a matter of right pursuant to Indiana Appellate Rule 14(A), which allows interlocutory appeals of orders for the delivery of possession of real property.

5. Turner also asserts that because the Board failed to follow proper procedures under Indiana Code § 8–22–2–4 when calling the special meeting—where it decided to terminate his lease—its actions were void. Even assuming this issue was properly appealed as part of the partial summary judgment order, because Turner has failed to present cogent argument to support why the procedural deficiencies would have rendered the Board's actions void, we find that he has waived review of this issue. *See* Ind. Appellate Rule 46(A)(8)(a); *Ind. Family & Soc. Servs. Admin. v. Hospitality House of Bedford,* 783 N.E.2d 286, 295 (Ind.Ct.App.2003).

ently, Turner contends that his property interest in the hangar entitled him to due process protection. Summary judgment is appropriate only where the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Sizemore v. Erie Ins. Exch.*, 789 N.E.2d 1037, 1038 (Ind.Ct.App.2003). On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Id.* A party appealing from an order granting a motion for summary judgment has the burden of persuading the appellate tribunal that the decision to issue the order granting summary judgment was erroneous. *Id.* at 1038–39. Furthermore, we will sustain the trial court's decision to grant a motion for summary judgment when it is sustainable by any theory or basis found in the record. *Id.* at 1039. This Court and the trial court are bound to consider only those matters that were designated to the trial court. *Unincorporated Operating Div. of Ind. Newspapers, Inc. v. Trs. of Ind. Univ.*, 787 N.E.2d 893, 900 (Ind.Ct.App.2003), *trans. denied.* All properly asserted facts and reasonable inferences should be resolved against the moving party. *Sizemore,* 789 N.E.2d at 1039.

The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of property and liberty. *Reed v. Schultz,* 715 N.E.2d 896, 900 (Ind.Ct.App.1999), *trans. denied.* Where protected interests are implicated, the right to some kind of prior hearing is paramount. *Id.* Turner possessed a leasehold in the hangar, which is a property interest. *See Bowlby v. NBD Bank,* 640 N.E.2d 1095, 1098 (Ind.Ct.App. 1994). However, not all property interests are entitled to due process protec-

tion. *Id.* To have a property interest protected by the Fourteenth Amendment, a person must have more than a unilateral expectation of it; instead, he must have a legitimate claim of entitlement to it. *Downtown Auto Parks, Inc. v. City of Milwaukee,* 938 F.2d 705, 710 (7th Cir. 1991), *cert. denied,* 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 657 (1991). Moreover, property interests are created and their dimensions are defined by existing rules or understandings that stem from independent sources such as state laws. *Id.*

Turner argues that his leasehold in the hangar is a protected property interest. Turner further argues that because of his protected property interest, he should have been given personal notice of the Board's special meeting and his lease should have been terminated only after Kokomo Airport showed good cause for the termination. In support of his argument, Turner relies on several cases— *Rudder v. United States,* 226 F.2d 51 (D.C.Cir.1955), *Housing Authority of Los Angeles v. Cordova,* 130 Cal.App.2d Supp. 883, 279 P.2d 215 (1955), and *Chicago Housing Authority v. Blackman,* 4 Ill.2d 319, 122 N.E.2d 522 (1954)—to suggest that he has a protected property interest. However, these cases found that a governmental landlord may not retaliate against a tenant for exercising his or her free speech rights. In this case, no such allegation is made. Accordingly, we find these cases inapposite.

In addition, Turner likens his case to *Thorpe v. Housing Authority of Durham,* 386 U.S. 670, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1967). In *Thorpe,* a tenant of a low-rent public housing project was elected to be president of the tenants' association. The following day, her month-to-month lease was terminated without reason. When the tenant refused to vacate, the housing au-

thority sued to eject her. In response, the tenant asserted the violation of her constitutionally protected right to freely associate. The trial court and state supreme court determined that she had to vacate. On appeal to the U.S. Supreme Court, rather than addressing the issue directly, the Court found that a Department of Housing and Urban Development circular—issued after the order to vacate—controlled the issue. *Id.* at 673–74, 87 S.Ct. 1244. According to that circular, tenants in public housing projects were entitled to a reason for eviction and an opportunity to reply. The Court then remanded the case in order to apply the new rule. In this case, Turner does not argue that an administrative rule directed Kokomo Airport to provide him with a reason for termination and an opportunity to respond. Moreover, Turner failed to argue that he was being ejected from the hangar for participating in a constitutionally-protected activity. Therefore, we find *Thorpe* is readily distinguishable.

More instructive is *Downtown Auto Parks, Inc. v. City of Milwaukee*, 938 F.2d 705 (7th Cir.1991), *cert. denied*, 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 657 (1991). There, the City of Milwaukee entered into a lease agreement with Downtown Auto Parks to manage two parking structures on behalf of the City in 1982. Under a Wisconsin statute, the City was required to lease its revenue-producing parking lots to private persons unless it could not obtain reasonable terms and conditions. *Id.* at 707. The lease with Downtown was renewed in 1984 but not in 1986. Instead, in 1986, the City formed a contract with another group to manage the parking facilities. Downtown sued, arguing in part that the City denied it due process of law. The district court found that Downtown did not have a protected property interest in the renewal of the lease and ruled in the City's favor. Downtown appealed to the Seventh Circuit. On appeal, the appellate court agreed that Downtown did not have a protected property interest for due process purposes. *Id.* at 710. In so holding, the court explained that where an interest depends upon the discretion of an entity as opposed to deriving from rules, there is no protected property interest. *See id.* at 711 (citing *Scott v. Village of Kewaskum*, 786 F.2d 338, 339–40 (7th Cir.1986)).

Based on the holding of *Downtown*, we find that Turner did not have a protected property interest in the hangar.[6] Instead, Turner had a unilateral expectation that the lease would be renewed. There is no evidence that Turner was entitled to renewal of his hangar lease. Turner has directed us to no independent source, such as state law or a contract provision, which expanded his property rights in the hangar beyond those found in the lease. Nor has Turner suggested that there was an implied agreement between him and Kokomo Airport to automatically renew his lease. If we were to read the terms of the lease to bind the parties to renewal, we would "convert a short-term business arrangement into a lifelong marriage." *Id.* at 710. Because Turner's lease renewal was subject to the discretion of Kokomo Airport and not mandated by statute or rule, we find that he did not have a protected property interest. Further, because Turner did not have a protected property interest,

---

**6.** Even if we were to find that Turner's property interest in the hangar was subject to due process protection, we would likely conclude that he received all the process due to him. He had the opportunity to comment on the new lease before the Board adopted it but chose not to submit his comments until after the deadline. In addition, Turner was able to seek judicial review of the Board's decision to terminate the lease before being ordered to vacate.

he was not entitled to any more notice than that which the lease required.[7]

Under the lease terms, either Turner or Kokomo Airport had the right to terminate the lease by giving the other party thirty days written notice. In this case, Kokomo Airport complied with this lease requirement and gave Turner thirty days advance notice of its desire to terminate the lease—a fact that Turner does not contest. Therefore, the trial court did not err when it found that Turner received all the notice he was entitled to receive under the lease and ordered him to vacate the hangar.[8]

Judgment affirmed.

SHARPNACK, J., and MATHIAS, J., concur.

---

**7.** Because the lease did not require Kokomo Airport to show good cause before terminating the lease, we need not address whether it made such a showing.

**8.** Turner also suggests that we should declare the lease in violation of public policy because it is a contract of adhesion. We decline his invitation. Here, Kokomo Airport was not required to offer an alternative lease agreement to its tenants. It simply could have terminated all its leases and invited new tenants to sign new lease agreements. We will not prevent Kokomo Airport from exercising its contractual rights.

Lastly, Turner contends that the trial court's March 13 order requiring him to vacate the hangar by March 16 was unlawful; however, because this issue is tied to Turner's challenge of the trial court's indirect contempt citation, which was not properly before us, we will not address it.