Max PINKOWSKI and Edward Bernstein d/b/a E & M Realty and Eleanor Pinkowski, Appellants–Defendants,

v.

CALUMET TOWNSHIP OF LAKE COUNTY, Indiana, Appellee–Plaintiff.

No. 45A04–0601–CV–13.

Court of Appeals of Indiana.

Aug. 21, 2006.

David Paul Allen, Hammond, IN, Attorney for Appellants.

Dock McDowell, Jr., McDowell Law Firm Merrillville, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

This appeal involves certain improved real estate in Gary, commonly known as 1900 West 41 st Avenue, that was used as a facility for the township trustee. Appellants-defendants Max Pinkowski and Edward Bernstein, d/b/a E & M Realty, and Eleanor Pinkowski (collectively, the Lessors), appeal from the trial court's grant of summary judgment in favor of appellee-plaintiff Calumet Township of Lake County, Indiana (the Township). Specifically, the Lessors contend that granting summary judgment and specific performance in favor of the Township was error because the designated evidence established that the Township failed to properly exercise the option to purchase the property that was set forth in the parties' lease agreement (Agreement) and the subsequently executed Option contract (Option). In essence, the Lessors maintain that because the option to purchase the property had expired before the Township exercised it, its motion for summary judgment should have been granted.

Concluding that the trial court properly granted the Township's motion for sum-

mary judgment, and determining that the remedy of specific performance was properly ordered in this case, we affirm the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

## FACTS

The undisputed facts are that in January 1984, the Lessors and the Township executed the Agreement, which was to expire on December 31, 1993. The first rental payment was "due and payable on the 1st day of January, 1984, and a like sum on the 1st day of each month thereafter during the term of this lease, with interest at the rate of ten ... percent per annum upon each installment after the same becomes due, and with attorney fees in the event of default." Appellant's App. p. 123. Under the Agreement, the Lessors agreed to maintain the exterior portions of the building in good repair, and the Township would not make any alterations or additions to the premises without the Lessors' written consent.

The Agreement was subsequently modified with an Addendum on August 1, 1984. The Addendum contained provisions for the Township to rent more space that the Lessors had constructed on the premises at their expense in exchange for additional rent. All other provisions and terms of the original Agreement were to remain the same.

Pursuant to the "Remedies of Lessor," the Agreement provided:

> If said rent, or any part thereof, shall at any time be in arrears and unpaid, and without any demand being made therefore, or if said lessee or his assigns shall fail to keep and perform any of the covenants, agreements or conditions of this lease, on his part to be kept and performed, and such default is not cured within thirty (30) days after written notice from Lessor setting forth the nature

of such default, ... it shall be lawful for Lessor, his heirs or assigns without notice or process of law, to enter into said premises, and again have, repossess and enjoy the same as if this lease had not been made, and thereupon this lease and everything herein contained on the part of said Lessor to be done and performed shall cease, terminate and be utterly void, all at the election of Lessor; without prejudice, however, to the right of the Lessor to recover from said Lessee, or assigns, all rent due up to the time of such entry. Failure on the part of Lessor to avail himself of any right or remedy hereunder shall not constitute a waiver thereof as to any future default or breach by Lessee or assigns of the Lessee.

Appellant's App. p. 126–27 (emphasis supplied). Thereafter, on June 8, 1995, the parties agreed to, and executed, a ten-year "Lease Renewal and Modification," (Renewal) that was to expire on December 31, 2003. *Id.* at 434. The Renewal was prepared by the Lessors' legal counsel, David Allen. In relevant part, the Renewal provision stated:

## LEASE RENEWAL

In consideration of the [Lease Extension], Lessee does agree to pay rent ... payable in installments of $6,496.88 per month, the first payment being due and payable on the 1 st day of January, 1994, and a like sum on the 1 st day of each month thereafter during the term of this lease, with interest at the rate of ten ... percent per annum upon each installment after the same becomes due, and with attorney fees in the event of default.

## LEASE MODIFICATION

*Past Capital Improvements.* Lessor hereby approves and ratifies all capital

improvements made to the premises by Lessee through the date of Lessor's execution of this Lease Renewal and Modification.

*Remodeling and Future Capital Improvements.* Lessor hereby approves and ratifies any past remodeling (including installation of interior partitions) and stipulates that Lessee may perform future remodeling (including installation of interior partitions) without prior notice to or consent from Lessor.

Lessor hereby approves the submitted plans for the addition of a vehicle garage and for the expansion of paved parking by approximately 11,000 square feet. *Lessee agrees that such additions or improvements shall be at the sole expense of Lessee and that Lessee shall be entitled to no lien,—equitable or otherwise—for the cost or value of such additions or improvements. Lessee is solely responsible for the clearing of trees and shrubs, grading, drainage, and fill necessary to the paved parking expansion. Lessee further agrees that maintenance and repair of the vehicle garage, including its exterior portions, shall be the sole responsibility of Lessee at Lessee's expense.*

. . .

As to any remodeling, additions, or improvements performed by Lessee, Lessee must use plans, materials, and workmanship such as not to damage or commit waste upon the premises.

*Id.* at 130–31 (emphasis added).

On July 19, 1995, the Lessors executed an option to purchase the property in favor of the Township. The Option was captioned at the top of the first page of an addendum to the Agreement and read as follows: "Re: Real Estate Lease of January 1984 and Addendum of August 1984 for 41st Ave. Multipurpose Center." *Id.* at

132. The text of the Option provided as follows:

In consideration of the renewal and modification of the captioned Real Estate Lease, Lessee is awarded an option to purchase upon the terms stated. If the Lease, as renewed and modified, is still in effect as of November 1, 2003 and if Lessee is not in default or in arrears on any payments due hereunder, then Lessee may—by giving notice in writing to Lessor between November 1, 2003 and November 30, 2003 (inclusive)—purchase the real estate for cash at a fixed price of . . . $200,000. For purposes of this option, notice is deemed given when mailed to the address to which monthly rent is then sent.

*CLOSING*

Upon exercise of the Option to Purchase, closing would be scheduled for the earliest mutually convenient date during the month of January, 2004. Rent would be pro-rated to date of closing. . . .

*Id.*

Beginning in January 2002, the Township never paid the rent on the first day of each month. In fact, the Lessors routinely "billed" the Township for the amount due, and the rent was eventually paid on an average of approximately eight days late each month. Appellant's Br. p. 51–52. In November 2003, the Township did not pay rent on November 1, but on November 3, Mary Elgin, a trustee for the Township, sent a letter to Allen that provided, in pertinent part, as follows:

Calumet Township *proposes to enter into negotiations leading to the possible purchase of the property* located at 1900 West 41 st Avenue in Gary. . . . This proposition is being directed to you in conformance with the "Option to Purchase" clause of the Addendum to Lease

Renewal and Modification signed by my predecessor on June 8, 1995, which stipulates, in part: "If the Lease, as renewed and modified, is still in effect as of November 1, 2003, and if Lessee is not in default or in arrears on any payments due hereunder, the Lessee may—by giving notice in writing to Lessor between November 1, 2003 and November 30, 2003 (inclusive)—purchase the real estate for cash ..." Please reply as soon as possible so that we may conclude this matter in a timely manner.

*Id.* at 134 (emphasis added). Allen responded on Friday, November 7, 2003, stating that:

I regard that letter as a proposal to negotiate a "possible purchase" of the multi-purpose center. I do not regard the letter as an unconditional exercise of the Option to Purchase granted in 1995 as a part of the lease Renewal. There are no negotiable terms to the Option to Purchase, which calls for a cash purchase price of $200,000, payable at a January closing. Unless I have misread your letter, the Township is not proposing to proceed on those terms. If it is your intent to exercise the Option to Purchase according to its terms, I need some additional notice to that effect by November 30, 2003.

*Id.* at 135 (emphases added). In a letter dated November 24, 2003, McDowell sent additional correspondence to Allen, which provided as follows:

On behalf of the Calumet Township of Lake County, Indiana, and in my capacity as Township attorney, notice is hereby given that:

1. The Lease between the Calumet Township of Lake County, Indiana ('LESSEE') AND Max Pinkowski and Edward Bernstein d/b/a E & M Realty ('LESSORS') is currently in effect and was in effect as of November 1, 2003.

2. The Calumet Township of Lake County, Indiana is not in default or in arrears on any payments due on or concerning the Lease;

3. The effective date of this notice is November 24, 2003;

4. Notice is herewith given to George T. Kruse, CPA, which is the address to which monthly rent is sent by Lessee to Lessor, that the Calumet Township of Lake County, Indiana, exercises the option to purchase the above real property.

The Calumet Township of Lake County, Indiana, therefore herewith notifies you of the exercise of the Option to Purchase the above described real estate for cash at the fixed price of ... [$200,000].

*Id.* at 136–37.

On November 28, 2003, Allen responded, stating:

While I do not maintain that there has been a default by the Township, there is the parol factual circumstance that rent for November 2003 is unpaid and in arrears as of this writing. *Accordingly, the attempted exercise of the option to Purchase has failed by reason of the arrearage in rent. Assuming November rent is not paid on or before November 30, 2003, then your time window for exercising the option will have closed. If the Township becomes current on rent by paying November and December rent by December 8, 2003, then I would be happy to discuss terms for the sale of the [Property].*

*Id.* at 142 (emphasis added).

On December 12, 2003, Allen wrote McDowell and said in part:

I am writing in part to update my letter of November 28, 2003 *and to confirm my position that there was no timely exercise of the Option to Purchase the Multi–Purpose Center. November rent*

*for the Multi–Purpose Center was due November 1, 2003 but paid December 2, 2003, resulting in an arrearage in rent from November 2, 2003 through the expiration of the Option on November 30, 2003.* I acknowledge payment of December rent on December 8, 2003. Accordingly, I stand willing to discuss terms for the sale of the Multi-purpose Center. While I cannot simply restore the lapsed Option to Purchase, I do have authority to extend a proposal which is inherently fair and beneficial to the Township.

*Id.* at 143 (emphasis added). Four days later, Allen again wrote to McDowell, stating:

My information from my clients is a bit more complete than it was yesterday when we spoke by telephone. Let me first reiterate that my clients are willing to sell to the Township, or to another entity or person, for fair market value. The intent of my clients is to obtain their own appraisal in the near future. The Township is at liberty to obtain an appraisal for its own use. The Lease and Addendum from 1984 and the 1995 Lease Extension have no provision expressly dealing with a holding over beyond the term of the Lease.

*Id.* at 144. Thereafter, on January 27, 2004, McDowell sent additional correspondence to Allen, maintaining that the Township "remains ready, willing and able to close the deal . . . by or before January 31, 2004." *Id.* at 145–46.

The Township ultimately filed a complaint for declaratory judgment on April 26, 2004, against the Lessors. Thereafter, it filed an amended complaint, asserting causes of action for specific performance, promissory estoppel, unjust enrichment, fraud, and breach of contract.

Both parties filed motions for summary judgment. In essence, the Township acknowledged that although rent had not been paid on November 1, the Lessors had waived any timely payment provisions set forth in the Agreement. Therefore, the Township claimed that the Lessors were estopped from terminating the option to purchase. Moreover, the Township claimed that because it properly notified the Lessors of its intent to exercise the option to purchase and had ultimately complied with all the terms and conditions of the Agreement, it was entitled to specific performance because the Lessors had breached the Agreement.

On the other hand, the Lessors claimed that they were entitled to summary judgment because the correspondence that they received from the Township never qualified as an option to purchase the real estate. In essence, the Lessors claimed that because the Township was in arrears on its rental payments, the proposed option to purchase was not properly exercised in accordance with the terms of the Agreement. Moreover, the Lessors contended that the option to purchase was not properly exercised because no legislative body had approved the trustee's actions. As a result, the Lessors maintained that the trustee's lack of authority and the Township's rental arrearage precluded it from exercising the option to purchase. *Id.* at 406.

Following argument on the motions, the trial court determined that

The Defendants correctly reference Indiana case law requiring strict adherence to the terms of an option to purchase. *Brokaw v. Roe,* 669 N.E.2d 1039 (Ind.App.1996); *Candlelight v. MHC,* 750 N.E.2d 1 (Ind.App.2001). However, strict adherence to the terms of the Option to Purchase herein would require specific performance from the Defendants. The date specified in the Option to Purchase to determine whether the lease was "still in effect" and "not in

default or in arrears" is November 1, 2003. Moreover, the Trustee did give timely notice of her intention to exercise the Option to Purchase, as this right did not expire until November 30, 2003. The confusion that ensued between the parties regarding monthly rental payments and the ability to close on the purchase of the property by a date certain was subsequent and secondary to the Defendants' refusal to honor the Option to Purchase.

*Id.* at 8. As a result, the trial court determined that the Township was entitled to specific performance in accordance with the Agreement and Option. The Lessors now appeal.

### DISCUSSION AND DECISION

#### I. Standard of Review

On appeal from the grant or denial of a motion for summary judgment, our standard of review is the same as that of the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Am. Home Assurance Co. v. Allen,* 814 N.E.2d 662, 666 (Ind.Ct.App.2004). A party seeking summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Tack's Steel Corp. v. ARC Constr. Co., Inc.,* 821 N.E.2d 883, 888 (Ind.Ct.App.2005). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.* Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Best Homes, Inc. v. Rainwa-*

*ter,* 714 N.E.2d 702, 705 (Ind.Ct.App.1999). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 461 (Ind.2002). On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. *Sizemore v. Erie Ins. Exch.,* 789 N.E.2d 1037, 1038 (Ind.Ct.App.2003). A party appealing from an order granting summary judgment has the burden of persuading us that the decision was erroneous. *Id.* at 1038–39.

■ We also note that specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin,* 725 N.E.2d 455, 458 (Ind.Ct.App.2000). Rather, a grant of summary judgment may be affirmed upon any theory supported by the designated evidence. *Id.* Finally, the fact that the parties made cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Ind. Farmers Mut. Ins. Group v. Blaskie,* 727 N.E.2d 13, 15 (Ind.Ct.App.2000).

#### II. The Parties' Contentions

The Lessors maintain that summary judgment was improperly granted to the Township because the trustee was without authority to exercise the option to purchase, inasmuch as the Township Board (Board) had not granted its approval for the purchase of the property. The Lessors also contend that the letter that the

Township trustee sent to Allen on November 3, 2003, did not constitute a sufficient exercise of the option, and that the Township's subsequent communications purporting to exercise the option did not cure any deficiency because the Township's failure to pay the rent in a timely manner resulted in an arrearage that precluded a valid exercise of the option. Thus, the Lessors argue that it was entitled to judgment as a matter of law.

In response, the Township argues that while the relevant statutes require the Board to perform certain functions before real property may actually be purchased, "the obtaining and tendering of the purchase price are not requirements or elements of the prerequisites to the Option election." Appellee's Br. p. 21. Additionally, the Township maintains that any rent arrearage was "cured" after it had paid the rent following its receipt of notice that the rent was late. Moreover, the Township claims that the Option was ambiguous as to what constituted a "default" or rent arrearage under the terms of the Agreement. Appellee's Br. p. 8.

The Township further maintains that because the Lessors had sent invoices, accepted late payments for rent on numerous occasions, and had never considered the Township to have been in default of the Agreement, the Lessors waived any requirement for prompt payment of the rent in this instance, as time was no longer of the essence with regard to these payments. As a result, the Township claims that because the November 2003 rent was paid in accordance with the Lessors' notice of arrearage and pursuant to the "Remedies" provision set forth in the Agreement, the condition of the Option requiring the Township not to be "in default" or "in arrears" when the option was exercised had been satisfied. Appellee's Br. p. 9. Therefore, the Township argues that the trial court properly entered summary judgment in its favor.

### A. Township Board Approval

The Lessors first claim that summary judgment was erroneously granted for the Township because the trustee lacked the authority to exercise the option. In essence, the Lessors claim that the trustee could not exercise the option because the Board failed to pass a resolution authorizing such an act, and appraisals of the property had not been obtained as required by the relevant statute.

In resolving this issue, we first note Indiana Code section 36–6–4–2 provides that a township's executive is its trustee. A companion statute, Indiana Code section 36–6–4–4, sets forth the powers of the trustee:

The executive may do the following:

(1) Administer oaths when necessary in the discharge of official duties.

(2) Appoint an attorney to represent the township in any proceeding in which the township is interested.

(3) Enter into certain oil and gas leases of township property under IC 36–9.

(4) Personally use a township vehicle for the performance of official duties, but only if the use is authorized by the township legislative body.

(5) Exercise other powers granted by statute.

In addition to such powers, the trustee is also charged with performing fifteen specific duties that are designed to protect the township, which include the management of all property interests, attending meetings of the township legislative body, and the receipt and paying out of township funds. I.C. § 36–6–4–3. The list is not exclusive, inasmuch as the trustee must also perform "other duties prescribed by statute." I.C. § 36–6–4–3(16).

■ In light of the above, as well as other statutes that relate to a trustee's ability to perform various functions with the consent of a township's legislative body,[1] i.e., the Board, the Lessors urge that the trustee did not have the power to exercise the option to purchase the real estate in this instance because the Board did not approve that action. Furthermore, the Lessors direct us to Indiana Code section 36–1–10.5–1—the Appraisal Statute—which applies generally to political subdivisions and their agencies:

> A purchasing agent *shall purchase land* or a structure only after compliance with the following procedures:
>
> (1) The fiscal body of the political subdivision shall pass a resolution to the effect that it is interested in making a purchase of specified land or a structure.
>
> (2) The purchasing agent shall appoint two (2) appraisers to appraise the fair market value of the land or structure. The appraisers must be professionally engaged in making appraisals or be trained as an appraiser and licensed as a broker under IC 25–34.1.
>
> (3) The appraisers shall return their separate appraisals to the purchasing agent within thirty (30) days after the date of their appointment. The purchasing agent shall keep the appraisals on file in the purchasing agent's office for five (5) years after they are given to the purchasing agent.
>
> (4) The purchasing agent shall give a copy of both appraisals to the fiscal body.

(Emphasis added). In our view, it is apparent that the Appraisal Statute—as well as other provisions of this chapter that pertain to the trustee's powers and duties—is designed to work as a safeguard to protect the township and prevent its trustee from purchasing real estate over and above its market value. That said, we find the Lessors' argument under the appraisal statute somewhat disingenuous when considering the amount of rent that the Township paid and the improvements that had been made to the property when compared to the selling price set forth in the Agreement.

We also note that Indiana Code section 36–1–10–9(a), a statute that regulates a local government's power to lease and exercise options to purchase property, provides that "the lease[2] may provide that the leasing agent has an option to renew the lease for a further term or to purchase the property. The terms and conditions of the purchase must be specified in the lease." To be sure, Indiana Code section 36–6–4–3(5) impliedly authorizes the township trustee—as its purchasing agent—to exercise the option to purchase the property in this case. Moreover, we note that in the recent case of *Township Board of Calumet Township of Lake County, et al. v. Elgin,* 850 N.E.2d 1020 (Ind.Ct.App.2006), a different panel of this court was called upon to decide whether the Board, after having allocated certain sums for professional and service contracts executed by the Trustee, could "micromanage" or "control" the Trustee's expenditures by a passage of various resolutions. 850 N.E.2d at 1023, 1024. We determined that the trial court "accurately observed that the Township

---

1. Indiana Code section 36–6–4–8(b) provides that the trustee may contract for certain health and community services with the consent of the township legislative body. Similarly, while the executive proposes an annual budget pursuant to Indiana Code section 36–6–4–11, the legislative body adopts the budget. I.C. § 36–6–6–11.

2. Among other things, this Chapter applies to "(1) political subdivisions and agencies of political subdivisions that determine to acquire structures, transportation projects, or systems by lease or lease-purchase."

Board could not unilaterally declare itself a 'governmental unit' within the scope of the Home Rule Act." [3] *Id.* at 1023. Thus, it was held that the Board did not have the authority under the Home Rule Act to pre-approve the Trustee's contracts and purchases that exceeded a particular amount. *Id.* at 1023. In concluding that summary judgment was properly entered for the Trustee, we noted that the Board failed to provide any authority for the proposition that a particular branch of a governmental unit may not enter into a contract or that one branch of a governmental unit may pre-approve the proposed contracts of another. *Id.* at 1024.

We also observe that the Lessors have failed to show that the trustee's exercise of the option to purchase was tantamount to a purchase of land that is contemplated in Indiana Code section 36–1–10.5–1. As this court determined in *Lafayette Expo Center, Inc. v. Owens*, 531 N.E.2d 508, 510 (Ind.Ct.App.1988):

It has been many times held that an option to purchase gives no right of property in and to the thing which is the subject of the option. *It is not a sale. It is not even an agreement for a sale. At most, it is but a right of election in the party receiving the same to exercise a privilege, and only when that privilege has been exercised by an acceptance does it become a contract to sell.*

(Emphasis added).

Finally, there was no mention by the Lessors in their correspondence to the Township, in the Option, or in the Agreement, that an appraisal had to be obtained before the option could be exercised, or that the trustee's authority to exercise the option was at issue. When the correspondence commenced regarding the exercise of the Option, it was never contemplated by either party that the trustee might have

been without authority to exercise the Option. Rather, it was only after the commencement of the instant litigation that the Lessors asserted this claim. To be sure, Allen indicated in his letter to McDowell on November 7, 2003, that while the Township's initial attempt to exercise the option was rejected, he went on to state that "some additional notice" was required by November 30, 2003, that the Township intended to exercise the Option under its terms. Appellant's App. p. 135. Therefore, in addition to our conclusion that the trustee did, indeed, have the authority to exercise the Option, it is apparent that the Lessors's efforts to challenge the trustee's authority only after litigation had commenced is tantamount to the type of "gotcha litigation" that we do not condone or tolerate. *See Smith v. Smith*, 793 N.E.2d 282, 286 (Ind.Ct.App.2003) (recognizing that "gotcha" litigation tactics that would result in one party's unjust enrichment and the other being unjustly penalized for failing to return to court to memorialize an agreement that the parties themselves had determined to be best for their children would not be tolerated); *see also Thomas v. City of Miami Beach*, 753 So.2d 591, 591 (Fla.Dist.Ct.App.2000) (disapproving of "gotcha" administrative practices). For all of these reasons, we reject the Lessors' claim that they were entitled to summary judgment on the theory that the Township trustee lacked the authority to exercise the option to purchase the property.

### B. Exercise of the Option

■ Proceeding to the parties' arguments with regard to whether the Township properly exercised the option, we note that construction of written contracts is generally a question of law for which summary judgment is particularly appropriate. *Forty–One Assoc., LLC v. Bluefield As-*

---

**3.** Ind.Code § 36–1–3–1 et seq.

soc., *L.P.*, 809 N.E.2d 422, 426 (Ind.Ct. App.2004). When the terms of the contract are clear and unambiguous, those terms are conclusive, and this court will not construe the contract or consider extrinsic evidence. *Id.* Rather, we will simply apply the contract provisions. *Id.* When interpreting a contract, a court must ascertain and effectuate the intent of the parties. *Id.* The contract must be read as a whole and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. *Id.*

■ On the other hand, if the terms of a written contract are ambiguous, it is the responsibility of the trier-of-fact to ascertain the facts necessary to construe the contract. *Mid State Bank v. 84 Lumber Co.*, 629 N.E.2d 909, 914 (Ind.Ct.App. 1994). As this court recognized in *Roy A. Miller & Sons, Inc. v. Industrial Hardwoods Corp.*, 775 N.E.2d 1168, 1173 (Ind. Ct.App.2002), "a contract term is not ambiguous merely because the parties disagree about the term's meaning." Rather, language is ambiguous only if reasonable people could come to different conclusions about its meaning. *Id.* If the contract is ambiguous or uncertain in its terms, then extrinsic circumstances and rules of contract construction may be employed to help construe the contract and ascertain the intent of the parties. *Ruff v. Charter Behavioral Health Sys. of Northwest Ind., Inc.*, 699 N.E.2d 1171, 1176 (Ind.Ct.App. 1998). Any ambiguities in a contract are to be strictly construed against the party who employed the language and who prepared the contract. *Id.*

We also note that when a summary judgment ruling is based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Mid State Bank,* 629 N.E.2d at 914.

With regard to option contracts, we note that in *Brokaw v. Roe,* 669 N.E.2d 1039 (Ind.Ct.App.1996), this court observed that:

An option to purchase real estate is a contract by which the owner of the realty agrees with another person that the latter shall have the power to purchase such property at a fixed price within a certain period of time. By an option, the owner subjects himself to the liability of having to convey the property if the option is exercised within the time and in the manner stipulated. By failing to comply with the option's terms, the option holder deprives himself of the right to demand the enforcement of the contract. Because the optionee is the only party capable of exercising the option, courts have required strict adherence to the option's terms.

*Id.* at 1041; *see also Candlelight Prop. v. MHC Operating,* 750 N.E.2d 1, 13–14 (Ind. Ct.App.2001).

■ In addition, when a party exercises an option to purchase, "[r]ecitation of the exact terms of the agreement [is] not necessary." *Rowland v. Amoco Oil Co.,* 432 N.E.2d 414, 417 (Ind.Ct.App.1982). Only essential terms need be included to render a real estate option contract enforceable. *See Wolvos v. Meyer,* 668 N.E.2d 671, 676 (Ind.1996).

■ Finally, we note that our courts order specific performance of contracts for the purchase of real estate as a matter of course. *New Life Comm. & Church of God v. Adomatis,* 672 N.E.2d 433, 438 (Ind.Ct.App.1996). Courts readily order specific performance with regard to real estate purchases because each piece of real estate is considered unique, without an identical counterpart anywhere else in

the world. *Unger v. Ind. & Mich. Elec. Co.*, 420 N.E.2d 1250, 1261 (Ind.Ct.App. 1981). A party seeking specific performance of a real estate contract must prove that he has substantially performed or offered to do so. *UFG, LLC v. Southwest Corp.*, 784 N.E.2d 536, 543 (Ind.Ct.App. 2003).

■ Turning to the merits of this case, it is readily apparent that the exercise of the Option required the existence of certain triggering events: (1) the 1984 Agreement was to have been in effect as of November 1, 2003; (2) as of November 1, 2003, the Township must not have been in default or in arrears on any payments due under the Agreement; and (3) the Township was required to give written notice to the Lessors between November 1, 2003, and November 30, 2003, of its exercise of the option to purchase. Appellant's App. p. 132.

Here, the Option specifically stated that "by giving notice in writing to Lessor between November 1, 2003 and November 30, 2003 . . . [the Township may] . . . purchase the ['Property']." Appellant's App. p. 132. Additionally, the Option specified that there must be no default or arrears "as of November 1, 2003." *Id.* at 132. On the other hand, the Agreement provided that if the rent "shall at any time be in arrears and unpaid . . . and such default is not cured within thirty days after written notice from Lessor setting forth the nature of such default," the Lessors could terminate the Agreement. *Id.* at 126.

In addressing the parties' contentions, we first note that while the letter sent by the trustee to Allen on November 3, 2003, purported to exercise the option to purchase the property, the statement that the Township *"proposes to enter into negotiations* leading to the possible purchase of the property" Appellant's App. p. 134 (emphasis added), failed to satisfy the terms of the Option. In particular, the Township

was required to give notice between November 1, 2003 and November 30, 2003, of its exercise of the option to purchase the "real estate for cash at a fixed price of . . . $200,000." *Id.* at 130–31. However, we must conclude that the language of the November 3 correspondence failed to "clearly and unequivocally" do so under the specific terms of the Option.

By the same token, there was no quantitative limitation with respect to the number of notices that the Township could provide in order to effectively exercise the Option, so long as the exercise was within the time frame set forth in the Option. And the Lessors acknowledged the same in the November 7, 2003, letter that Allen sent to McDowell, stating "If it is your intent to exercise the Option to Purchase according to its terms, *I need some additional notice* to that effect by November 30, 2003." *Id.* at 135 (emphasis added).

Moreover, the Lessors did not challenge the Township's ability to exercise the option on the grounds of rental arrearage, default, or any other purported breach of the Agreement in this correspondence. As a result, the Lessors have made no showing that the Township should have been precluded from its exercise of the option at a later date, simply because it had not complied with the terms of the Option in the November 3 correspondence.

The Township then sent additional correspondence dated November 24, 2003, unequivocally indicating that "The Calumet Township of Lake County, Indiana, therefore herewith notifies you of the exercise of the Option to Purchase the above described real estate for cash at the fixed price of . . . [$200,000]." Appellant's App. p. 136–37. It was not until the November 28 correspondence from Allen to McDowell that the Lessors indicated that the Township's "attempted exercise" of the option failed by reason of a purported rent ar-

rearage. *Id.* at 142. By the same token, Allen specifically indicated in that correspondence that there had been no default of the Agreement by the Township, and further instructed the Township that if "rent is not paid on or before November 30, 2003, *then your time window for exercising the option will have closed.*" *Id.* at 142 (emphasis added). He also maintained that if the November and December rent was paid by December 8, 2003, he would "discuss terms for the sale of the property." *Id.* at 142. In the subsequent correspondence of December 12, Allen essentially changed his position, declaring that the Township had not properly exercised the option to purchase because "November rent ... was due November 1, 2003 but paid December 2, 2003, resulting in an arrearage in rent from November 2, 2003 through the expiration of the Option on November 30, 2003." *Id.* at 143.

Under the terms of the Agreement, a default may occur when rent, which was due on the first day of each month, is "in arrears and unpaid." *Id.* at 123, 126. However, the "Remedies" provision of the Agreement states that when rent is "in arrears and unpaid," such "default" could be cured within thirty (30) days after written notice from the Lessors "setting forth the nature of such default." *Id.* at 126. And the Lessors could elect to terminate the Agreement if a default, such as unpaid rent, was not paid within "thirty (30) days after written notice from the Lessor." *Id.*

When construing these terms, and examining the designated evidence that was presented to the trial court, the Township's correspondence of November 24 unequivocally stated that it was exercising the Option pursuant to the agreed-upon purchase price. It was not until November 28 that the Lessors gave the Township any written notice of a purported rental arrearage in accordance with the "Remedies" provision of the Agreement. McDo-

well received this notice on December 1, and the Township paid the rent for November the following day, and paid the December rent on December 8. *Id.* at 142–43. As a result, the Township cured any purported rental delinquency well within the thirty days after the Lessors had given notice of the arrearage provided under the Agreement.

Somewhat similar circumstances were presented in *Fetz v. Phillips,* 591 N.E.2d 644, 647 (Ind.Ct.App.1992). In that case, Fetz executed to the Phillipses a five-year lease with the option to purchase approximately nine acres of farmland. Among other things, the Phillipses agreed to maintain liability insurance and to pay all real estate taxes. If the Phillipses failed to perform the conditions of the lease, Fetz was required to inform the Phillipses by written notice that they were in default. If the Phillipses continued in default for thirty days after receiving notice, the lease and option would be cancelled. *Id.* at 646.

Despite the Phillipses' failure to secure liability insurance and pay the real estate taxes, Fetz never sent them written notice of the default. The Phillipses ultimately informed Fetz that they wished to exercise their option to purchase the property, and they tendered the purchase price that was stated in the contract. Fetz refused to sell the land, and the Phillipses filed an action seeking specific performance of the contract. In the end, the trial court entered summary judgment against Fetz and ordered her to execute the deed to the Phillipses once the parties could agree on a purchase price. *Id.* at 646.

On appeal, we determined that the Phillipses' failure to comply with the terms of the lease agreement did not result in cancellation of the option to purchase. In arriving at this result, we noted the option to purchase provision set forth in the contract:

Time shall be of the essence of this Option [to Purchase]. If Lessee–Purchaser fails to perform or observe any other condition or term of this Contract and such default continues for a period of thirty (30) days after written notice thereof is given to Lessee–Purchaser, then Lessor–Vendor shall cancel this Option and take possession of the Real Estate and remove Lessee–Purchaser therefrom or those holding or claiming under Lessee–Purchaser, without any further demand. In the event of the Lessor–Vendor's cancellation after default by Lessee–Purchaser, all rights and demands of Lessee–Purchaser under this contract and in and to the Real Estate shall cease and terminate, and the Lessee–Purchaser shall have no further right, title or interest in or to the Real Estate.

*Id.* at 647–48. In affirming the trial court's determination that the option to purchase had been properly exercised, we observed:

Both parties agree the Phillipses failed to maintain liability insurance and to pay the property taxes as required under the lease. Under the above provision, however, Fetz was required to provide the Phillipses written notice of noncompliance. The record reveals Fetz never gave the Phillipses written notice of their failure to perform under the contract. Because notice was necessary before the lease and option could be cancelled, the option remained valid even though the Phillipses failed to comply with two requirements under the lease.

*Id.* at 648.

When examining the circumstances here, along with those that were presented in *Fetz,* is apparent that the Township cured any alleged rental delinquency when it paid the November rent on December 2 following the notice of arrearage that Allen sent on November 28. Although the Lessors may not have been *required* to provide notice to the Township of any alleged default under the Agreement—unlike the contract in *Fetz*—our reading of the Option and the Agreement together in this case indicates that the Lessors did not consider the Township to be in default under the Agreement as long as the rent was paid within thirty days after the Township was provided with written notice of any arrearage. Because the November rent was paid within the thirty days after notice was sent in accordance with the correspondence of November 28, and any alleged arrearage was "cured" by this payment, the prerequisite to exercising the Option was satisfied. Therefore, the Township properly exercised the Option in accordance with its terms.

## CONCLUSION

In light of our discussion above, we conclude that the Township trustee acted within her authority to exercise the option to purchase the property. Additionally, when construing the terms of the Agreement and the Option together, it is apparent that the Township cured any purported rental arrearage when it paid the November 2003 rent within thirty days after receiving notice from the Lessors that the rent had not been paid. As a result, we conclude that the Township properly exercised the Option, and the trial court properly entered summary judgment for the Township.

The judgment of the trial court is affirmed, and this cause is remanded for further proceedings consistent with this opinion.

SULLIVAN and MAY, JJ., concur.